JOURNAL ENTRY AND OPINION
Defendant-appellant Thomas Dodak appeals from the trial court's sentence imposed subsequent to his plea of guilty. The appellant pled guilty to six counts of theft in violation of R.C. 2913.02/2901.24(A)(1). The appellant was sentenced on count 120, a fourth-degree felony, to serve a term of incarceration of seventeen months. The court ordered that after serving seventeen months on count 120, the appellant be placed on community control sanctions for five years on counts 5, 17, 26, 38, and 50, each fifth-degree felonies. The remaining 34 counts of the indictment were nolled.
Although the prosecutor did not make a statement of facts for the record, it can be gleaned from the record that the appellant entered into a business arrangement with Clayton Krcal and KDR Holdings. The appellant was the secretary/treasurer of KDR Holdings, Krcal was the mastermind, and Joanne Winkler was the real estate agent. KDR Holdings apparently acquired property and as a result of real estate transactions, twelve families were bilked out of approximately $350,000. Some of the victims had already received some compensation, but not from the appellant.
During the plea hearing, on the record and as "part and parcel" of the plea agreement (T. 21), the appellant agreed to make restitution to his victims in the amount of $272,000. The appellant has not appealed from the plea itself, but rather has appealed the sentence imposed by the trial court on count 120, the fourth-degree felony.
At the sentencing hearing, the appellant was afforded time to speak to the court on his own behalf. The appellant expressed his remorse for his crimes and stated that he would like an opportunity to repay the victims. However, the appellant also made such statements as:
 I wish I had the opportunity to turn back the clock to possibly have taken more control over the events that have occurred.
 I truly am sorry for not taking more control of the business and business decisions that led up to where I am today and how KDR our company was conducting business. As a secretary/treasurer of KDR I was not allowed by Clay Krcal to be more involved. He always wanted to be the man in control at all times.
 He was pretty much, as most people are saying, was the master mind of all the business decisions.
* * *
 If only Clay Krcal had given me accurate information and also communicated accurate information for the homeowners I would definitely not be in this position and could have produced the results the homeowners wanted.
(T. 27).
The appellant informed the court as to how his business dealings affected him and his family and that all he wanted from this land deal was financial security. He stated that he, too, was a victim of Krcal's lies and deception.
The appellant continued:
 [Krcal's] inability to handle company finances, his lies and deceitfulness to customers, business partners and personally me is the reason why this all happen (sic). In fact, I had never been in trouble with the law ever, and then it only happened working with Clayton.
 Clay at this time has possibly destroyed my good record and standing with the law. This has created an embarrassment to my family, financial hardship so (sic) me and my family, for it restricts me to have the ability to work for and earn a decent living with any company.
* * *
 It's only because of Clayton Krcal this all has happened to me.
(T. 30-31).
One of the appellant's victims, Mr. Martin, eloquently spoke to the court of the hardship the appellant's actions have had upon his life. Mr. Martin expressed his disbelief at the appellant's protestations of remorse. He noted that the appellant was the treasurer of the company and that as such the appellant was responsible for the money. He inquired of the appellant "Where the hell the money go?" (T. 34). Mr. Martin stated that both he and his wife work two jobs and that they lost their life savings, $27,638. The appellant shattered their dreams.
The court then afforded the appellant a second opportunity to speak. The appellant likened himself to Mr. Martin because he, too, believed in Krcal.
The court considered sentencing factors in the following manner:
 THE COURT: The Court takes the following factors into consideration, and I understand that you have some problems with some of these, and as I read these off from the probation report, the findings, you may indicate which ones you object to and which ones you have a problem with.
 That there's been a prior adjudication of delinquency or history of criminal convictions
MR. DENNIE: We have an objection to that finding.
 THE COURT: Okay. And the Court does note that there are indications of two priors, one of which was dismissed, and one of which was nolle (sic).
 And I think one of them that is listed as a prior conviction is actually the case as Mr. Dennie explained to me that's presently pending which would have been the case before Judge Richard McMonagle, is that correct?
MR. DENNIE: That's correct.
 THE COURT: There's been a failure to respond favorably in the past for sanctions imposed for criminal convictions.
MR. DENNIE: We object to that.
THE COURT: Shows no remorse for the offense?
MR. DENNIE: We have an objection to that.
 THE COURT: That the victim suffered serious physical, psychological or economic harm as result of the offense.
MR. DENNIE: No objection.
 THE COURT: That the offender held a position of trust and the offense was related to that position of trust.
MR. DENNIE: We object to that finding.
 THE COURT: That the professional reputation, occupation or office facilitated the offense or is likely to influence future conduct of others.
MR. DENNIE: We object to that.
 THE COURT: And that the offender held a position of trust and the offense was related to that position of trust and the position obligated the offender to prevent the offense or bring those committing it to justice or defendant's reputation or position facilitated the offense or was likely to influence the conduct of others.
MR. DENNIE: We object to that, if I could.
 THE COURT: And the Court, therefore, finds that the offender is not ameanable (sic) to a community control sanction.
 MR. DENNIE: We object to that finding by the probation department.
 THE COURT: Okay. The Court therefore finds that the minimal prison sentence would demean the seriousness of the offender's conduct and would not adequately protect the public from future crimes such as this.
 The Court further finds that this, what this defendant committed was one of the worse forms of the offense, so when the Court considers the minimum sentence I think that that would say to all these homeowners who were impacted like Mr. Martin that was was (sic) an easy thing to do and it doesn't matter.
 And I think the Court needs to make sure that is not the message to this sentence. The sentence of the Court — he hasn't paid one penny back, and that bothers me.
(T. 42-45).
The appellant sets forth three assignments of error.
The first assignment of error:
 THE TRIAL COURT ERRED BY FAILING TO SATISFY THE STATUTORY OBLIGATION TO CONSIDER WHETHER COMMUNITY CONTROL SANCTIONS WOULD HAVE BEEN CONSISTENT WITH THE PURPOSES AND PRINCIPLES OF FELONY SENTENCING AS SET FORTH IN 2929.11.
The appellant argues that the trial court erred in failing to consider the statutory scheme when it sentenced the appellant to a term of imprisonment instead of placing him on community control sanctions on count 120. The appellant asserts that mere conclusory statements that mimic statutory language are not sufficient and that the court erred in failing to relate its statements to the facts of this particular case. The appellant concludes that the trial court did not meet the requirements of R.C. 2929.19.
The procedures involved in determining whether or not the trial court complied with the statutory requirements when sentencing a defendant for a felony offense of the fourth or fifth degree are set forth in R.C.2929.19(B)(2):
 (2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 (a) * * * If it imposes a prison term for a felony of the fourth or fifth degree * * *, its reasons for imposing the prison term based upon the overriding purposes and principles of felony sentencing set forth in section 2929.11 of the Revised Code and any factors listed in divisions (B)(1)(a) to (h) of section 2929.13 of the Revised Code that it found to apply relative to the offender.
This court has held that making conclusory statements that mimic the sentencing statute language without analyzing whether appellant's conduct justified those conclusions is reversible error. State v. Gary (2001),141 Ohio App.3d 194. Considering a defendant's prior record and the need to protect the public alone, without more, is also not sufficient. Id. at 197.
In the case sub judice, the trial court merely recited factors as listed in the PSI. The only reason given by the trial court for its sentence was that the court did not want to send an inappropriate message to the victims. This court is likewise sympathetic to the victims and keenly aware that the appellant's actions caused much suffering among the defrauded families. We agree that a serious wrong was committed, however, until such time as the trial court places its reasoning on the record in accordance with the requirements of R.C. 2929.19, and the other sentecing statutes, this court will not reach any conclusion as to whether the imposition of a prison term is justified.
The appellant's first assignment of error is well taken.
The second assignment of error:
 THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT-APPELLANT TO MORE THAN THE MINIMUM PRISON SENTENCE WHEN HE HAD NOT PREVIOUSLY SERVED A PRISON TERM.
The appellant's second assignment of error is moot pursuant to App.R. 12.
The third assignment of error:
 THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT WHO WAS INDIGENT TO RESTITUTION OF $272,000.
The appellant asserts that the order of the trial court requiring the appellant to pay restitution for his crimes should not have been imposed under R.C. 2929.19(B)(6) due to the appellant's inability to repay his victims.
R.C. 2929.18 authorizes the trial court to impose financial sanctions upon a defendant, including restitution. R.C. 2929.19(B)(6)requires the trial court to consider the defendant's present and future ability to pay the sanction.
It has been held that when the agreement to pay restitution to the victim of the crime for which the appellant was charged is part and parcel of the plea agreement, there is no reversible error in imposing the financial sanction. State v. Agbesua (Jan. 5, 2001), Green App. No. 2000 CA 23, unreported. In State v. Charles (Oct. 22, 1999) Ashtabula App. No. 98-A-0043, unreported, the court noted that when the record demonstrates that the complained of sentence was central to the plea agreement, the defendant may not appeal from a sentence which he agreed to as part of a plea agreement. Charles citing to 2 Katz Giannelli (1996), Section 44.8, 154; State v. Coleman (1986), 30 Ohio App.3d 256;State v. Drake (Apr. 15, 1987), Summit App. No. 12859, unreported, Statev. Dunn (Oct. 7, 1987), Summit App. No. 13093, unreported. Moreover, a defendant may waive his right to challenge the sentence when the sentence imposed is the one asked for. Drake, supra.
In the matter at hand, the appellant clearly agreed to the restitution as part and parcel of his plea agreement. This court will not countenance his hindsight.
The appellant's third assignment of error is not well taken.
Reversed and remanded for resentencing.
This cause is reversed and remanded.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
ANNE L. KILBANE, J., and COLLEEN CONWAY COONEY, J., CONCUR.